NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD IBANIBO<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>    Defendant. | Civil Action No. 11-3822 (CCC)<br><br>OPINION |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Edward Ibanibo ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). This motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of Administrative Law Judge James Andres (the "ALJ") is affirmed in part and remanded in part.

**II.    PROCEDURAL HISTORY**

**A.  Procedural Background**

Plaintiff applied for Supplemental Security Income Benefits ("SSIB") from the Social Security Administration ("SSA") on April 28, 2008, alleging disability beginning on April 5, 2007. Plaintiff's claim was denied, as was his request for reconsideration. Plaintiff then filed a

1

request for a hearing before an ALJ, which was held on April 15, 2010. In a written opinion dated April 29, 2010, the ALJ determined that Plaintiff was not disabled. The Appeals Council denied review, rendering the ALJ's decision the final judgment of the Commissioner.

### B. Personal and Employment Background

Plaintiff, a fifty-seven year old male, is married with four children. (R. 32.) Plaintiff has a Bachelor of Arts degree in Finance. (Tr. 24-25.) Plaintiff alleges that he became disabled on April 5, 2007. (*Id.* at 3.) Plaintiff maintains that he left his career in finance due to his disability, and that he thereafter made two brief, unsuccessful attempts to return to work. (R. 25-27.) Plaintiff first attempted to return to work as a clerk for Wall Street Services in August 2007, but left this position due to stress associated with the job. (*Id.* at 26-27.) Plaintiff then worked in merchandising at StoreCast Corporation of America from November 2007 through February 2008, but left because he was unable to meet the physical demands of the job. (*Id.* at 26.)

### C. Medical Background

On April 2, 2007, Plaintiff was treated at Robert Wood Johnson University Hospital, after he complained of chest pain. (*Id.* at 174.) A CT scan revealed a proximal descending thoracic aortic aneurysm with intramural hematoma. (*Id.* at 175.) On April 5, 2007, Plaintiff underwent an endovascular stenting procedure. (*Id.*) The consultation report from Plaintiff's hospitalization indicates that Plaintiff denied any history of diabetes, but the report did note a history of hypertension with "variable blood pressure controls." (*Id.*)

Plaintiff was discharged from the hospital on April 6, 2007. (*Id.* at 179.) The discharge summary noted a positive outcome stating that "[a]fter surgery, [Plaintiff] did well. His pain was immediately relieved postoperatively. His blood pressure became more easily managed. He began eating a regular diet. He was walking and ambulating without assistance and he was

transferred to the unit without significant events." (*Id.*)  In a letter dated April 16, 2007, Dr. Gerard Crowley, a surgeon in the Division of Vascular Surgery at Robert Wood, indicated that upon follow-up "[Plaintiff's] only complaint appears to be tiredness in his left arm." (*Id.* at 193.) Dr. Crowley also noted that "[i]t appears [Plaintiff] does have a stenosis or occlusion on the left side, probably related to the placement of the graft." (*Id.*)  Dr. Crowley expressed hope that this condition would "improve with exercise and that [Plaintiff] will develop collaterals." (*Id.*)

On May 30, 2007, Plaintiff underwent a stress test. (*Id.* at 218.)  The results were positive for ischemia. (*Id.* at 207, 220.)  A Holter Monitor performed on that same date was negative for arrhythmia. (*Id.* at 206.)  On June 28, 2007, Plaintiff underwent a cardiac catheterization and angiography. (*Id.* at 204, 224-25.)  This procedure revealed that: (1) Plaintiff's left main artery was normal with no significant stenosis; (2) his LAD was also normal with no significant stenosis; (3) he had 20% stenosis in the mid LCX; (4) 20% stenosis in the distal RCA; (5) a borderline normal ejection fraction at 50%; and (6) 100% occlusion of the left subclavian artery. (*Id.* at 224-25.)  The examining physician Dr. Preet Randhawa concluded that Plaintiff "does have some symptoms.  If these symptoms persist, I will consider a CT angiogram and then he may need bypass." (*Id.*)  There is no indication in Plaintiff's medical records that he underwent either of these procedures.

In her internal medical report dated July 17, 2008, Dr. Goradia, Plaintiff's treating physician, indicated diagnoses of arteriosclerotic heart disease, degenerative joint disease, angina, and coronary artery disease. (*Id.* at 226.)  Dr. Goradia noted that Plaintiff was experiencing fatigue, upper extremity numbness due to subclavian artery occlusion, orthopnea, dyspnea, and "moderate-to-severe back pain." (*Id.* at 228-29.)  Dr. Goradia further stated that a stress test would pose a risk to Plaintiff due to his angina and moderate-to-severe coronary artery

3

disease. (*Id.* at 227.)  Dr. Goradia noted that Plaintiff did not have chest discomfort and concluded that Plaintiff could lift or carry up to ten pounds occasionally, stand or walk up to two hours a day and sit up to six hours, and experienced push/pull limitations. (*Id.* at 228-29.)

In a later evaluation conducted on July 20, 2009, Dr. Goradia again diagnosed Plaintiff with coronary artery disease and degenerative joint disease; however, Dr. Goradia attributed greater residual functional capacity to Plaintiff than she had found in 2008. (*Id.* at 261.)  Dr. Goradia indicated that Plaintiff could carry up to ten pounds occasionally and up to five pounds frequently. (*Id.* at 257.)  Dr. Goradia cited Plaintiff's back and neck pain and degenerative joint disease as impairments causing this limitation. (*Id.*)  In an increase from the previous year, Dr. Goradia noted that Plaintiff could stand or walk up to five hours a day and up to one hour a day without interruption. (*Id.* at 258.)  In contrast to her 2008 assessment, Dr. Goradia stated that Plaintiff's ability to sit was not affected by his medical impairments. (*Id.*)  Dr. Goradia concluded that Plaintiff would be "unable to function at regular jobs requiring strenuous physical exertion and/or endurance." (*Id.*)

## III.  DISCUSSION

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" but must give deference to the administrative findings. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *See also* 42 U.S.C. §405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 Fed. Appx. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). Where the ALJ has rejected competent medical evidence, the ALJ must adequately explain his reasons and provide the rationale behind his decision. *See Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses and medical opinions, and subjective evidence of pain, the reviewing court must determine whether the ALJ's decision is adequately supported. *See Curtain v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981). Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. §416.927. Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are

supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### B.  Determining Disability

Pursuant to the Social Security Act, to receive SSIB, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §1382c(a)(3)(B).  Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …" *Id*.  Impairments that affect the claimant's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 416.969a(a)-(b); *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered nonexertional. 20 C.F.R. § 416.969a(a), (c); *Sykes*, 228 F.3d at 263.  Decisions regarding disability will be made individually and will be based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S. Ct. 1952, 76, L.Ed.2d 66 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id*. at 263, n.2.

At step one, the claimant's work activity is assessed, and the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of claimant's medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaging in substantial gainful activity, the analysis proceeds to the second step. At step two, the claimant must show he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010). If the claimant does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c),

416.920(a)(4)(ii) & (c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the claimant's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the claimant is per se disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. *Burnett*, 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. *Id*. Simple conclusory remarks will not suffice and will leave the ALJ's decision "beyond meaningful judicial review." *Id*.

When the claimant does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the claimant's residual functioning capacity ("RFC") enables him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(ix), 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings as to the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether the claimant has the capability to perform the past relevant work. *Burnett*, 220 F.3d at 120. The SSA often classifies RFC and past work by physical exertion requirements from "sedentary" to "very heavy work." *See id*.; 20 C.F.R. §§ 404.1567, 404.967. If the claimant can perform his past work, the ALJ will find that

he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds to the fifth and final step.

At step five, the Commissioner must show that, based on the claimant's RFC and other vocational factors, there is a significant amount of other work in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  During this final step, the burden lies with the government. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Sykes*, 228 F.3d at 263.  If the Commissioner cannot show there are a significant number of other jobs for the claimant in the national economy, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(ix), 416.920(a)(4)(iv).

## IV.   DISCUSSION

### A.  Summary of the ALJ's Findings

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was not disabled and denied his claim for SSIB. (R. 17.)  The ALJ arrived at his decision by following the required five-step sequential analysis.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 5, 2007, the alleged onset date of his disability. (*Id.* ay 13.)  At step two, the ALJ concluded that Plaintiff had the following severe impairments: coronary artery disease, hypertension, and status post repair of a dissecting aortic aneurysm ("post-repaired aortic aneurysm"). (*Id.*)  Accordingly, the ALJ proceeded to step three, where he evaluated the listing in section 4.04 for Ischemic Heart Disease.  The ALJ found that Plaintiff's coronary artery disease "did not rise to the level of meeting listing 4.04 for Ischemic Heart Disease," and that "there is no evidence which demonstrates [the] criteria." (*Id.* at 14.)

The ALJ then proceeded to step four, where he found that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a). (*Id.*)  In support of this determination, the ALJ pointed to objective medical evidence in the record as well as to Plaintiff's testimonial evidence regarding his symptoms, pain, and functional limitations. (*Id.* at 14-15.)  The ALJ summarized Plaintiff's testimony from the administrative hearing, including Plaintiff's testimony regarding his physical limitations, his symptoms of pain, dizziness and fatigue, and his daily activities. (*Id.* at 15.)  The ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*)  The ALJ did not give significant weight to Dr. Goradia's original opinion that Plaintiff was unable to sit for six hours, because "[t]he claimant's condition is a cardiac condition and this opinion by Dr. Goradia is inconsistent with her [later] opinion in Exhibit 12F.  In Exhibit 12F, Dr. Goradia notes that the claimant suffers no limitations with sitting and she opined that he could stand and walk up to five hours." (*Id.* at 16.)  The ALJ thus concluded that Plaintiff "retains the residual functional capacity to perform the exertional demands of a full range of sedentary work." (*Id.* at 15.)

The ALJ then determined that Plaintiff was capable of performing his past work as an income specialist and financial consultant.  The ALJ referred to Plaintiff's assertion "that his work involved sitting for the majority of the workday with lifting less than 10 pounds," and to DOT 250.257-014, which "describes the job of a financial planner as involving sedentary work with sitting for the majority of the workday and not lifting more than 20 pounds." (*Id.* at 16.)  Accordingly, the ALJ concluded that Plaintiff retained the RFC to perform past relevant work as

an income specialist and financial consultant and was therefore not disabled pursuant to 20 C.F.R. § 404.1520(f).

**B. Analysis**

Plaintiff asserts that the ALJ's decision is incorrect for several reasons. Plaintiff first argues that the decision fails to acknowledge many of his "severe" impairments at step two. Next, Plaintiff asserts that the ALJ failed to consider all of his impairments at step three. Third, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence and does not properly consider his subjective complaints. Finally, Plaintiff claims that the ALJ erred in failing to do a task-by-task analysis of his past relevant work.

*1. Failure to consider certain of Plaintiff's impairments as severe at step two*

Plaintiff alleges that the ALJ failed to designate his obesity, diabetes, degenerative joint disease, and ischemic heart disease as severe impairments at step two. Plaintiff asserts that these omissions affect all subsequent steps in the analysis, and that therefore, "right from the start at step two, the decision is hopelessly defective." (Pl. Br. 9.)

As discussed, the claimant bears the burden of proof at step two. *Sykes*, 228 F.3d at 263. Step two is considered a "threshold step" in which the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 96 L. Ed. 119 (1987); Social Security Ruling (SSR) 86-8, 1986 SSR LEXIS 15, at *6-7. An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. 2010).

In the instant case, other than stating that he was obese and diabetic, Plaintiff provided no medical evidence demonstrating these impairments, and no explanation as to how these conditions had more than a minimal effect on his ability to work. Moreover, Plaintiff did not allege obesity or diabetes on his initial disability worksheet, nor does Plaintiff point to any explicit diagnoses of obesity or diabetes in the medical record. In fact, during his initial hospital visit on April 2, 2007, Plaintiff reported that he had no history of diabetes. Accordingly, the ALJ had no evidentiary basis to conclude that these alleged impairments were severe and properly omitted them from his analysis at step two.

Similarly, the ALJ properly omitted Plaintiff's degenerative joint disease from his analysis at step two. As Defendant correctly points out, Dr. Goradia, Plaintiff's consulting physician who diagnosed Plaintiff with this disease, also determined a RFC consistent with sedentary work. (Def. Br. 7.) As such, Plaintiff did not provide sufficient evidence that his degenerative joint disease had more than a minimal effect on his ability to work and the ALJ was therefore correct in omitting it from his analysis.

Plaintiff's last point, that the ALJ neglected to consider Plaintiff's ischemic heart disease as severe at step two of his analysis, is correct. In his decision, the ALJ found that Plaintiff suffered from three severe heart-related impairments: coronary artery disease, hypertension, and a post-repaired aortic aneurysm. The ALJ then specifically noted that Plaintiff's nuclear stress test was positive for ischemia, but failed to list it as a severe impairment. Therefore, the Court remands this case so that the ALJ may consider Plaintiff's diagnosis of ischemic heart disease at step two of the disability inquiry.

    2. *Failure to consider all of Plaintiff's impairments at step three*

Plaintiff asserts that the ALJ failed to consider his diagnoses of hypertension and a post-repaired aortic aneurysm at step three of the analysis, despite including them as severe impairments at step two.

In his analysis, the ALJ compared Plaintiff's coronary artery disease to listing 4.04C and determined that it did not meet the required criteria for ischemic heart disease. However, the ALJ did not address Plaintiff's hypertension, nor did he consider whether Plaintiff's diagnosis of a post-repaired aortic aneurysm met the requirements of listing 4.10A (aneurysm of aorta or major branches). In addition, after failing to include Plaintiff's ischemic heart disease as a severe impairment at step two, the ALJ did not consider whether it met the requirements for listings 4.04A-B. Therefore, this Court remands this case so that the ALJ may consider Plaintiff's diagnoses of hypertension, a post-repaired aortic aneurysm, and ischemic heart disease at step three of the disability inquiry.

### 3. *The ALJ's RFC assessment is supported by substantial evidence*

Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff argues that the ALJ failed to consider all the evidence and to explain his reason for rejecting certain evidence. Specifically, Plaintiff points to the ALJ's rejection of Dr. Goradia's original opinion in which she stated that Plaintiff was unable to sit for six hours and could only walk or stand up to two hours a day.

In his analysis, the ALJ determined that Plaintiff retained the capacity to perform "a full range of sedentary work which requires lifting and carrying objects weighing up to 10 pounds; frequently lifting and carrying objects weighing less than 10 pounds; and standing and walking for up to two hours and sitting for up to six hours in an eight-hour day." (R. 15.) In support of his RFC determination, the ALJ chose to discredit Dr. Goradia's first opinion and instead relied

upon her later evaluation, as well as the opinion of Dr. Schoen, the state agency physician. Dr. Goradia's second evaluation determined that Plaintiff could lift and carry up to ten pounds occasionally and up to five pounds frequently; could walk or stand up to five hours total in an eight hour workday, and up to one hour without interruption; and that Plaintiff's ability to sit was not affected. Dr. Goradia also noted some postural limitations, indicating that Plaintiff's ability to crawl was limited by his vertigo and his ability to reach and push/pull was affected by his degenerative joint disease. Dr. Goradia concluded that Plaintiff was "unable to function at regular jobs requiring strenuous physical exertion and/or endurance." (*Id.* at 261.) Dr. Schoen similarly concluded that Plaintiff could lift up to ten pounds occasionally and less than ten pounds frequently, could stand or walk for at least two hours a day and sit for about six, and that Plaintiff's ability to push or pull was not affected beyond his aforementioned limitations in lifting and carrying.

As such, the Court finds that the ALJ properly specified the evidence upon which he relied and gave an adequate explanation for rejecting conflicting evidence. Accordingly, there is substantial evidence to support the ALJ's determination that Plaintiff retained the capacity to perform a full range of sedentary work. The ALJ's RFC assessment is therefore affirmed.

> 4. *The ALJ's properly evaluated Plaintiff's subjective complaints and correctly determined that he was able to perform past relevant work*

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's subjective complaints and incorrectly concluded that he was able to perform past relevant work.

In his decision, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at

15.) As mentioned previously, the ALJ's RFC assessment was properly based upon the entire record, including the medical opinion of Drs. Goradia and Schoen. The substantial evidence standard requires deference to inferences drawn by the ALJ if those inferences are supported by substantial evidence. *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 26676, *14 (citation omitted). Because there was substantial evidence to support the ALJ's determination that Plaintiff's subjective complaints of pain were not entirely supported by the record, this finding must be upheld.

Finally, in determining that Plaintiff was able to perform his past work as an income specialist and financial consultant, the ALJ properly relied upon Plaintiff's assertion "that his work involved sitting for the majority of the workday with lifting less than 10 pounds," and DOT 250.257-014, which "describes the job of a financial planner as involving sedentary work with sitting for the majority of the workday and not lifting more than 20 pounds." (R. 16.) Pursuant to Social Security Ruling 82-62:

> Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62, 1982 SSR LEXIS 27. Here, the ALJ referred to Plaintiff's description of his past relevant work, corroborated that description with information from the Dictionary of Titles, and correctly determined, based on Plaintiff's RFC, that he was capable of performing his past work as an income specialist and financial consultant. Accordingly, the ALJ's decision is affirmed on this point as well.

## V. CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part and remanded in part. An appropriate Order accompanies this Opinion.

Dated: July 18, 2012

*s/Claire C. Cecchi*
HON. CLAIRE C. CECCHI
United States District Judge
